Edward C. **BELL**, Petitioner,

v.

**Richard D. HONGISTO**, Sheriff of the City and County of San Francisco, State of California, Respondent.

No. C–72 206.

United States District Court,
N. D. California.

Aug. 16, 1972.

As Amended on Petition for Rehearing
Aug. 25, 1972.

B. E. Bergesen, III, San Francisco, Cal., for petitioner.

Richard M. Sims, III, San Francisco, Cal., for respondent.

Thomas M. O'Connor, City Atty., Raymond D. Williamson, Rene Auguste Chouteau, Deputy City Attys., San Francisco, Cal., for amicus curiae.

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

ZIRPOLI, District Judge.

On January 27, 1972, the Honorable Clayton Horn of the Superior Court in and for the County of San Francisco cited petitioner Edward C. Bell, a member of the bar of the State of California, for criminal contempt and summarily imposed a sentence of five days in jail and a fine of five hundred dollars, which sentence was stayed until February 1, 1972 to permit petitioner to seek habeas corpus relief from the appellate courts. On the same afternoon, the Court of Appeal for the First Appellate District denied petitioner's petition for a writ of

habeas corpus without opinion. On January 28, 1972, and again on February 2, 1972, the California Supreme Court also denied two successive, but separate, petitions for habeas corpus. Meanwhile, petitioner had begun serving his sentence in the San Francisco County Jail; on February 3, 1972, he was released by order of this court pending final determination of this cause. The matter came on regularly for hearing on March 21, 1972, and after oral argument counsel for both sides expressed their view that the case was ripe for submission and their corresponding willingness to submit the case at that point for decision by the court.

Although counsel differed slightly in their presentation of the facts of this case, such differences as do exist appear to the court to be inconsequential to this decision. The operative facts, which the court summarizes below, are not in dispute:

On January 24, 1972, petitioner appeared on behalf of three defendants in the case of People v. James, No. 81855, before the Honorable Walter Calcagno, the Master Criminal Calendar Judge of the Superior Court, at which time he renewed a discovery motion which Judge Calcagno had previously denied without prejudice to such renewal. After a conference with counsel, Judge Calcagno scheduled the motion for hearing before him at 11:30 a.m. on January 27, 1972. Petitioner appeared at that time whereupon Judge Calcagno assigned the case, including the motion, to Judge Clayton Horn for trial at 1:30 p.m. and adjourned the proceedings for the noon recess. Petitioner did not immediately exercise his right to disqualify Judge Horn under Section 170.6 of the California Code of Civil Procedure.[1] However, at the conclusion of the proceedings, petitioner, who is apparently inexperienced in handling criminal matters, solicited the advice of two colleagues who told him that in their opinion he should disqualify Judge Horn. After determining to accept their advice in the interests of his clients, petitioner prepared and executed an affidavit in support of his motion to disqualify Judge Horn pursuant to the requirements of Section 170.6 and presented the affidavit to Judge Calcag-

1. Section 170.6 provides in pertinent part:
(1) No judge or court commissioner of any superior, municipal or justice court of the State of California shall try any civil or criminal action or special proceeding of any kind or character nor hear any matter therein which involves a contested issue of law or fact when it shall be established as hereinafter provided that such judge or court commissioner is prejudiced against any party or attorney or the interest of any party or attorney appearing in such action or proceeding.
(2) Any party to or any attorney appearing in any such action or proceeding may establish such prejudice by an oral or written motion without notice supported by affidavit or declaration under penalty of perjury or an oral statement under oath that the judge or court commissioner before whom such action or proceeding is pending or to whom it is assigned is prejudiced against any such party or attorney or the interest of such party or attorney so that such party or attorney cannot or believes that he cannot have a fair and impartial trial or hearing before such judge or court commissioner. Where the judge or court commissioner assigned to or who is scheduled to try the cause or hear the matter is known at least 10 days before the date set for trial or hearing, the motion shall be made at least five days before that date. If directed to the trial of a cause where there is a master calendar, the motion shall be made to the judge supervising the master calendar not later than the time the cause is assigned for trial. In no event shall any judge or court commissioner entertain such motion if it be made after the drawing of the name of the first juror, or if there be no jury, after the making of an opening statement by counsel for plaintiff, or if there be no such statement, then after swearing in the first witness or the giving of any evidence or after trial of the cause has otherwise commenced. . . .
(3) If such motion is duly presented and such affidavit or declaration under penalty of perjury is duly filed or such oral statement under oath is duly made, thereupon and without any further act or proof, the judge supervising the master calendar, if any, shall assign some other judge or court commissioner to try the cause or hear the matter. . . .

no at approximately 12:55 p.m. when the court reconvened. Judge Calcagno advised petitioner that his challenge to Judge Horn was not timely.

Petitioner reported to Judge Horn's court shortly before 1:30 p.m. and, upon the arrival of the Deputy District Attorney assigned to the case, presented his affidavit to disqualify Judge Horn in chambers. Judge Horn rejected the affidavit and informed petitioner that if he did not proceed to trial he would be held in contempt of court. In response to a direct order to proceed, petitioner refused. Judge Horn cited him for contempt on the basis of his finding that the refusal was "wilful, contemptuous and without sufficient reason or any legal cause." Upon the expiration of the stay granted by Judge Horn, petitioner served nearly two days of his sentence before he was released by order of this court. He is presently at large on his own recognizance.

Petitioner makes three arguments in support of his petition for a writ of habeas corpus. In two related, but conceptually distinct, arguments petitioner attacks on due process grounds the manner in which Judge Horn exercised his contempt powers. Petitioner argues, first, that since his motion to disqualify Judge Horn was "timely" under settled principles of California law, his contempt citation was at best arbitrary and at worst discriminatory; and, second, that the use of the summary contempt power in the circumstances of this case was an "abuse" of the court's power. In his third argument, petitioner challenges on equal protection grounds the statutory scheme which excludes both the right to appeal and the right to bail pending appeal as incidents of an adjudication of contempt. The court will consider petitioner's equal protection argument first.

The structure of petitioner's equal protection argument is relatively straightforward. Under California law, every individual convicted of a crime has a right to appeal whether it is a felony or a misdemeanor. Calif.Penal Code §§ 1237, 1466. While bail pending appeal is a matter of discretion for convicted felons, id. § 1272(3), convicted misdemeanants are entitled to bail pending appeal as a matter of right, id. § 1272(2). Thus, misdemeanants are by California law absolutely entitled to an appeal and bail pending the outcome of that appeal. However, a contemnor has no right to appeal, Calif.Code Civ. Pro. § 1222, or to bail pending appeal.[2] Since criminal contempt is a misdemeanor, Calif.Penal Code § 166, petitioner argues that depriving a misdemeanant contemnor of the right to appeal and bail pending appeal is a violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. While there is no question that the statutory scheme discriminates against a class of misdemeanants, the question before this court is whether that discrimination is in fact unconstitutional.[3]

In a series of decisions throughout the last 30 years the United States Supreme Court has identified a number of interests as "fundamental" and recognized that these interests deserve special consideration under the equal protection clause.[4] While the court has not articulated a general formula to distinguish

2. Calif.Code Civ.Pro. § 1222 provides: "The judgment and orders of the court or judge, made in cases of contempt, are final and conclusive." The court may impose a fine not exceeding five hundred dollars or five days imprisonment, or both. Id. §§ 1211, 1218.

3. Petitioner challenges the constitutionality of the state statutes here involved insofar as they deny him the right to appeal and bail pending appeal, but he does not seek injunctive relief. Accord-

ingly, although no party to these proceedings has suggested that a three-judge court should be convened, the court observes that a three-judge court is not required. See Wilson v. Gooding, 431 F.2d 855 (5th Cir. 1970); United States ex rel. Murray v. Owens, 341 F.Supp. 722 (S.D.N.Y.1972).

4. See, e. g., Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (interstate travel); Harper v. Virginia State Board of Elections, 383

"fundamental" interests from others, it has deemed these interests important because they are "individual and personal," Reynolds v. Sims, 377 U.S. 533, 561, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), and touch upon a "sensitive and important area of human rights," Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 536, 62 S.Ct. 1110, 1111, 86 L.Ed. 1655 (1942). To be sure, there is some question whether the right to appeal from a criminal conviction and the incidents of that right are constitutional rights. In Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the Supreme Court held unconstitutional conditioning direct appellate review of a criminal conviction on the defendant's ability to purchase a transcript, but reaffirmed that the right to appeal was not a constitutional right. The Court there said:

> It is true that a State is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all. See, *e.g.*, McKane v. Durston, 153 U.S. 684, 687–688, 14 S.Ct. 913, 914–915, 38 L. Ed. 867. But that is not to say that a State that does grant appellate review can do so in a way that discriminates against some convicted defendants on account of their poverty. Appellate review has now become an integral part of the Illinois trial system for finally adjudicating the guilt or innocence of a defendant. Consequently at all stages of the proceedings the Due Process and Equal Protection Clauses protect persons like petitioners from invidious discriminations. *Id.* at 18, 76 S.Ct. at 590.

Similarly, in Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), the Court held that where the merits of the one and only appeal an indigent had of right were decided without benefit of counsel, there existed an invidious discrimination between the rich and the poor which violated equal protection.[5] See also Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963); Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L. Ed.2d 892 (1963); Burns v. Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959). As the Court put it in Rinaldi v. Yeager, 384 U.S. 305, 310–311, 86 S. Ct. 1497, 1500, 16 L.Ed.2d 577 (1966): "This Court has never held that the States are required to establish avenues of appellate review, but it is now fundamental that, once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts."

■ Thus, while appeal and the right to bail pending appeal may not be constitutional rights, the question yet remains whether the interest which they protect is fundamental for purposes of applying the equal protection clause. In the court's view, it is. What is at stake here is petitioner's transcendent personal interest in his liberty pending termination of what the State of California recognizes as an integral part of the administration of justice in all misdemeanor cases with the sole exception of misdemeanor contempts.

> [T]he right to bail [pending appeal] is "fundamental" in that it involves issues of personal freedom in the most immediate and literal sense of those words. . . . The harm done to an innocent defendant who "serves time" before his conviction is reversed on appeal cannot be undone and serves as a continuing affront to our sense of justice. There may well be times

---

U.S. 663, 86 S.Ct. 1076, 16 L.Ed.2d 169 (1966) (voting); Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (education); Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (procreation).

5. To the extent that the underpinning of these cases, notably *Griffith* and *Douglas*, was the fact that the classifications were based on wealth, that underpinning has been seriously eroded by James v. Valtierra, 402 U.S. 137, 91 S.Ct. 1331, 28 L.Ed.2d 678 (1971), rev'g 313 F.Supp. 1 (N.D.Cal.1970) (three-judge court).

when the state is justified nonetheless in denying bail pending appeal. But when different standards are applied to bail applications based upon an apparently arbitrary classification, the courts are not obliged to accept hypothetical or unfounded excuses for the distinction drawn. United States v. Thompson, 452 F.2d 1333, 1340 (1971).

Since what is involved is a fundamental right, what Judge Skelly Wright has called "no less than the freedom to be free," *id.*, the court concludes that the classification California has drawn between misdemeanant contemnors and all other misdemeanants must be subjected to close and careful scrutiny.[6]

The respondent[7] offers several justifications for the distinction it has drawn. None of these asserted justifications can withstand the strict scrutiny which the court must bring to bear on the classification here involved; the court entertains considerable doubt whether they would be valid even if the court applied the usual equal protection standard which requires only a rational basis for the classification.

First, the respondent argues that the crime here involved is a "petty offense," not a serious crime. However, unlike cases in which such a dichotomy may

validly be the basis for disparate treatment when different types of crimes are involved, see Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), here the disparate treatment is accorded to individuals convicted of the same type of crime. The state accords the rights petitioner seeks to persons convicted of all misdemeanors, petty or serious, except misdemeanor contempt. Quite apart from the Supreme Court's rejection of distinctions based on the differences between felony and misdemeanor cases in several recent decisions, see Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); Mayer v. City of Chicago, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971); Williams v. Oklahoma City, 395 U.S. 458, 89 S.Ct. 1818, 23 L.Ed.2d 440 (1969), the court cannot distinguish the potential penalties flowing from a misdemeanor contempt conviction from those flowing from other misdemeanor convictions, especially where the collateral consequences of petitioner's conviction may include disbarment. Calif.Business and Prof.Code §§ 6101, 6103.

▮▮▮ Second, respondent points to the availability of state habeas corpus relief as a substitute for an appeal. However, the Supreme Court has long recognized that the writ of habeas cor-

---

6. Usually, especially in the areas of economic regulation or social welfare, the courts will not overturn a classification the legislature has drawn if it has a "rational basis." See, *e. g.*, Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957). When a legislature creates a "suspect classification," however, the courts insist that the state demonstrate an "overriding purpose," Loving v. Virginia, 388 U.S. 1, 11, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967), which is subject to "rigid scrutiny" by the courts. Korematsu v. United States, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944). When a "fundamental interest" is at stake, the standard of scrutiny approaches the rigor of the latter test. See, *e. g.*, United

States v. Thompson, 147 U.S.App.D.C. 1, 452 F.2d 1333, 1340 (1971): "The courts have been particularly careful to inspect classifications relating to the criminal process, even in cases where it could not possibly be contended that constitutional rights are involved." (citations omitted)

7. The petition for habeas corpus properly names Richard Hongisto, Sheriff of the City and County of San Francisco, as the respondent. On February 10, 1972, respondent filed a return disclaiming any interest in these proceedings. On February 25, 1972, the Honorable Clayton Horn, by and through the City Attorney of the City of San Francisco, made application to appear as amicus curiae. This application was granted. In the interest of convenience and clarity, however, the word "respondent" is used throughout this opinion.

pus does not perform the office of an appeal. Ex parte Terry, 128 U.S. 289, 305, 9 S.Ct. 77, 32 L.Ed. 405 (1888). See also In re Shipp, 62 Cal.2d 547, 552, 43 Cal.Rptr. 3, 399 P.2d 571 (1965); In re Dixon, 41 Cal.2d 756, 759, 264 P.2d 513 (1953). It is perfectly apparent in California that the procedural and substantive incidents of habeas corpus are not coterminous with the manner and scope of review on appeal. Aside from the summary disposition of habeas petitions, and the restricted scope of inquiry, Ex parte Hadley, 57 Cal.App.2d 700, 135 P.2d 381 (1943); Ex parte Wilson, 123 Cal.App. 601, 11 P.2d 652 (1932), bail is discretionary, Calif.Penal Code § 1476, not a matter of right as on appeal, *id.* § 1272(2). A misdemeanant contemnor may thus serve his entire sentence before obtaining any appellate court consideration at all, even the narrow review available by way of habeas corpus. The mere availability of habeas corpus does not justify denying an appeal to a misdemeanant contemnor any more than its availability would justify denying an appeal to any other class of misdemeanant offenders.

■ Third, respondent contends that vindicating the dignity of the court justifies summary disposition. While such an interest historically justifies dispensing with a hearing to establish the fact of a contempt committed in the judge's presence, it does not follow that it justifies depriving the contemnor of the right to appeal. In fact, the absence of any such compelling justification is made manifest by the appellate procedure which obtains in the federal system. See Sacher v. United States, 343 U.S. 1, 12–13, 72 S.Ct. 451, 96 L.Ed. 717 (1952). This court cannot conclude that the considerations which justify a summary adjudication *ipso facto* justify summary imposition of punishment when, in all other misdemeanor cases, imposition of punishment awaits the outcome of an appeal. To be sure, the State may expedite the determination of appeals from contempt convictions if it chooses, but the State has no interest at all in punishing what the respondent concedes is a "petty offender" prior to according him an appeal on the law and facts, which California has determined to be fundamental to insuring the integrity of the criminal process in all other cases.

■ In conformity with the foregoing opinion, the court concludes that denying a misdemeanant contemnor an appeal and bail pending appeal, rights to which all other misdemeanants are absolutely entitled under California law, violates the Equal Protection Clause of the Fourteenth Amendment. In view of this conclusion, the court expresses no opinion on the validity of petitioner's other constitutional arguments.

It is hereby ordered that the petition for writ of habeas corpus is granted. Petitioner shall have 10 days from the date of this order to file a notice of appeal and application for bail pending appeal in accordance with California law. Petitioner shall continue to be free from the custody of the respondent unless and until he is granted the right to appeal from his conviction, and, in connection therewith, the right to have bail set pending the determination of said appeal.

Should petitioner not be granted the right to appeal and to have bail set pending appeal, the court will entertain further proceedings and retains continuing jurisdiction for that purpose.