**Gladys M. LEWIS, Individually and on behalf of all other persons similarly situated, Plaintiff,**

**v.**

**Dr. Hayden H. DONAHUE, Individually and in his capacity as Director of the Oklahoma Department of Mental Health, Harold C. Theus, Individually and in his capacity as Presiding Judge for the Seventh Judicial District of the State of Oklahoma, Joe Wallace, Individually and in his capacity as Special Judge for the Seventh Judicial District of Oklahoma, Family Relations Division, Defendants.**

**No. CIV–76–0440–E.**

United States District Court,
W. D. Oklahoma.

Sept. 19, 1977.

Wesley G. Gibson, Carl G. Stevens, James H. Hiatt and Stan L. Foster, Oklahoma City, Okl., for plaintiff.

David K. McCurdy, Asst. Atty. Gen., Oklahoma City, Okl., for defendants.

Before HOLLOWAY, Circuit Judge, DAUGHERTY, Chief District Judge, and EUBANKS, District Judge.

MEMORANDUM OPINION AND ORDER

EUBANKS, District Judge.

This is an action for declaratory and injunctive relief seeking order declaring in-

valid and enjoining the enforcement of the provisions of the Oklahoma Mental Health Law, 43A O.S. § 73,[1] on the ground that section provides for the revocation of convalescent or out-patient leave by way of judicial order, issued summarily, upon ex parte application, in contravention of rights, privileges and immunities secured to all persons within the jurisdiction of the United States by the Constitution and the laws of the United States, specifically 42 U.S.C. § 1983. Jurisdiction of the court is predicated upon 28 U.S.C. § 1343(3) and (4).

The plaintiff requested that a specially constituted three-judge district court be convened to hear the case. (The action was instituted prior to the effective date of the act repealing 28 U.S.C. § 2281.) A three-judge district court was constituted by David T. Lewis, Chief Judge, United States Court of Appeals, Tenth Circuit, on March 3, 1977. The parties have agreed to present this matter to the court by way of a stipulation of facts and briefs, waiving argument.

*Stipulated Facts*

Plaintiff Lewis[2] was committed to Central State Hospital, Norman, Oklahoma, under the provisions of 43A O.S. §§ 54 and 55[3] on February 27, 1976. On March 5, 1976, plaintiff was released and placed on out-patient after care status. She was taken into police custody and returned to the hospital on May 24, 1976, pursuant to a court order revoking her out-patient status.[4] Prior to reinstitutionalization, plaintiff was afforded neither notice of the charges and facts allegedly necessitating revocation of leave, nor an opportunity to be heard; no findings of fact were made regarding the termination of out-patient status.

The parties have stipulated that such is the manner in which a person's convalescent leave or out-patient status is terminated in the Seventh Judicial District of Oklahoma; to wit, no hearing is held prior to the issuance of judicial order, or to custodial arrest, or to transportation to the appropriate mental institution.

*The Issues Before the Court*

The premier issue before the court is whether plaintiff has suffered deprivation of any constitutionally-protected right. If the answer to that issue be in the affirmative, the court must then determine whether plaintiff was deprived of such right in a way which does not comport with the constitutional guarantee of due process of law.

*"Conditional" Liberty*

It is defendants' position that inasmuch as a patient on leave or out-patient status remains under the continuing supervision of the Department of Mental Health for a period of twelve months, no action taken during that time can effect a change in status. Return of the patient to institutionalization is merely an instance of a continuing medical treatment. Thus, a person whose initial commitment was properly procured continues to be properly committed, "regardless of the physical location of the patient," and there can be no alteration in status, and, therefore, no legally cognizable deprivation of liberty. Defendants premise this argument on the statement that the granting of convalescent leave or out-patient standing does not result in "a transmutation of [a person] from a properly

1. 43A O.S. § 73 provides in pertinent part: "In the event authorization is necessary to accomplish the return to the hospital of the patient on convalescent leave, such authority is hereby vested in the county judge of the county where the patient is located. Law enforcement officers are authorized to detain and transport a patient on convalescent leave to the hospital pursuant to an order by the county judge."

2. The request for certification of this cause as a class action has been abandoned, temporarily, under reservation of a post-judgment certification request.

3. The procedures attending her initial involuntary commitment are not challenged in this action.

4. Plaintiff was granted a temporary restraining order by this court on June 2, 1976, and a preliminary injunction on June 7, 1976. She remains free on these orders.

committed mental patient to a citizen restored to full status."

The argument overlooks the fact that status need not be so polarized. The granting of out-patient standing did change plaintiff's situation—she ceased to be a person who was institutionalized and became a person permitted to enjoy a substantial degree of liberty. Conversely, revocation of leave effected an involuntary transfer from a relatively non-restrictive environment to a restrictive one, and a correlative deprivation of a measure of freedom.

■ The argument also overlooks the statutory requirement that release, or conditional release, of a patient be predicated upon a determination made by an appropriate authority that the patient is either restored to mental health, or that institutionalization is no longer likely to be beneficial and the patient's discharge will not be detrimental to his, or the public's welfare. In the latter instance, involuntary medical treatment may, but need not, continue. Thus, an out-patient's enjoyment of his liberty is conditioned only upon his not again becoming a danger to himself or others.

A leave may properly be indeterminate, or terminable upon the happening of certain conditions. But it cannot be denied that conditional, as well as absolute, rights fall "within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). See also *Meisel v. Kremens,* 405 F.Supp. 1253 (E.D.Pa.1975).

*Summary Revocation Upon Ex Parte Application*

Having determined that due process applies the issue becomes one of whether the statute provides such process as is due. It provides no more than return pursuant to judicial authorization, if necessary. It is not inconceivable that it would permit the return of a person to involuntary institutionalization to be predicated upon nothing more than the inference that, for some reason, someone deems contraindicated the prior determination that discharge would be non-detrimental.

■ We decline plaintiff's invitation to prescribe a full panoply of specific procedures which must be provided by law. That is not this court's function. It is sufficient, to decide the issue before us, to hold that a statute which permits the revocation of out-patient or convalescent leave without notice or opportunity to be heard prior to reinstitutionalization is infirm for failure to comport with the due process clause of the Fourteenth Amendment of the Constitution of the United States. See also *Gov't of the U. S. ex rel Shaban v. Essen,* 386 F.Supp. 1042 (E.D.N.Y.1974), aff'd without opinion, 516 F.2d 897 (2d Cir. 1975).

Accordingly, the relief sought by plaintiff herein is granted in accordance with the foregoing.

IT IS SO ORDERED.